UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| EMILY LEY PAPER, INC., d/b/a SIMPLIFIED, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | |
| DONALD J. TRUMP, in his official capacity as President of the United States; EXECUTIVE OFFICE OF THE PRESIDENT; UNITED STATESOF AMERICA; KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; DEPARTMENT OF HOMELAND SECURITY; PETE R. FLORES, in his official capacity as Acting Commissioner for U.S. Customs and Border Protection; and U.S. CUSTOMS AND BORDER PROTECTION, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:25-cv-00464 |
| *Defendants*. | ) | |

**DEFENDANTS' MOTION TO TRANSFER
AND MEMORANDUM IN SUPPORT**

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

OF COUNSEL:

ALEXANDER K. HAAS
Director

PATRICIA M. McCARTHY
Director

STEPHEN M. ELLIOTT
Assistant Director
U.S. Department of Justice
Civil Division
Federal Programs Branch

CLAUDA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

MICHELLE SPAVEN
Acting United States Attorn
JOHN C. SPACCAROTELLA
Assistant United States Attorney
NY Reg No. 4304291
111 N. Adams Street, 4th Fl.
Tallahassee, FL 32301
(850) 216-3862

SOSUN BAE
Senior Trial Counsel
LUKE MATHERS
BLAKE W. COWMAN
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St. NW
Washington, D.C. 20005
202-353-9063
Claudia.burke@usdoj.gov
*Counsel for Defendants*

April 14, 2025

## <u>TABLE OF CONTENTS</u>

MOTION TO TRANSFER ...............................................................................1

MEMORANDUM IN SUPPORT .....................................................................2

INTRODUCTION ...........................................................................................2

STATEMENT OF FACTS ...............................................................................4

    I.   Legal Background ...............................................................................4

       A.    The International Emergency Economic Powers Act ...............................4

       B.    The National Emergencies Act ................................................5

    II.    Factual Background ............................................................................7

STANDARD OF REVIEW ...............................................................................10

ARGUMENT ....................................................................................................11

    I.   Transfer Is Required Because the Court of International Trade Has Exclusive Subject Matter Jurisdiction over Simplified's Complaint ....................................11

CONCLUSION…………………………………………………………………...17

# TABLE OF AUTHORITIES

## Cases

*Alcan Sales, Div. of Alcan Aluminum Corp. v. United States*,
    693 F.2d 1089 (Fed. Cir. 1982)..........................................................................16

*Arjay Associates, Inc. v. Bush*,
    891 F.2d 894 (Fed. Cir. 1989) ...........................................................................14

*Commodities Export Co. v. U.S. Customs Serv.*,
    957 F.2d 223 (6th Cir. 1992) .............................................................................14

*Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*,
    18 F.3d 1581 (Fed. Cir. 1994) .................................................................... 12, 13

*Cornet Stores v. Morton*,
    632 F.2d 96 (9th Cir. 1980) ...............................................................................15

*Corus Group PLC v. Int'l Trade Comm'n*,
    352 F.3d 1351 (Fed. Cir. 2003) .........................................................................14

*Dames & Moore v. Regan*,
    453 U.S. 654 (1981) .............................................................................................4

*Dornbusch v. C.I.R.*,
    860 F.2d 611 (5th Cir. 1988)..............................................................................11

*Earth Island Institute v. Christopher*,
    6 F.3d 648 (9th Cir. 1990) .................................................................................16

*Jan's Helicopter Serv. Inc. v. Fed. Aviation Admin.*,
    525 F.3d 1299 (Fed. Circ. 2008) .......................................................................10

*K-Mart Corp. v. Cartier, Inc.*,
    485 U.S. 176 (1988) ...........................................................................................12

*Maple Leaf Fish Co. v. United States*,
    762 F.2d 86 (Fed. Cir. 1985) .............................................................................15

*Miami Free Zone Corp. v. Foreign Trade Zones Bd.*,
  22 F.3d 1110 (D.C. Cir. 1994) ...................................................................12

*Michael Simon Design Inc. v. United States*,
  609 F.3d 1335 (Fed. Cir. 2010) ................................................................14

*Motion Systems Corp. v. Bush*,
  437 F.3d 1356 (Fed. Cir. 2006) ................................................................14

*Orleans Int'l, Inc. v. United States*,
  334 F.3d 1375 (Fed. Cir. 2003) ................................................................12

*Pat Huval's Fisherman Wharf v. Int'l Trade Comm'n*,
  2006 WL 2460846 (W.D. La. 2006) .........................................................11

*Pentax Corp. v. Myhra*,
  72 F.3d 708 (9th Cir. 1995) ......................................................................11

*Regan v. Wald*,
  468 U.S. 222 (1984) ...................................................................................4

*Silfab Solar, Inc. v. United States*,
  892 F.3d 1340 (Fed. Cir. 2018) ................................................................14

*Solar Energy Indus. Assn. v. United States*,
  111 F.4th 1349 (Fed. Cir. 2024) ..............................................................14

*Totes-Isotoner Corp. v. United States*,
  594 F.3d 1346 (Fed. Cir. 2010) ................................................................14

*Transpacific Steel LLC v. United States*,
  4 F.4th 1306 (Fed. Cir. 2021) ..................................................................14

*U.S. Shoe Corp. v. United States*,
  523 U.S. 360 (1998) .................................................................................13

*United States v. Universal Fruits & Vegetables Corp.*,
  370 F.3d 829 (9th Cir. 2004) ....................................................................10

*United States v. Yoshida Int'l,*
    526 F.2d 560 (C.C.P.A. 1975) ...................................................................16

**Regulations**

U.S. Const., art. 1, § 8, cl. 1 .......................................................................13

**Statutes**

19 U.S.C. § 2483 ...........................................................................................7

28 U.S.C. § 1331 .........................................................................................12

28 U.S.C. § 1337(c) .....................................................................................12

28 U.S.C. § 1581(i)(1)(A) ............................................................................12

28 U.S.C. § 1581(i)(1)(B) ........................................................................ 12, 15

28 U.S.C. § 1581(i)(1)(D) ........................................................................ 12, 15

28 U.S.C. § 1631 ................................................................................... passim

3 U.S.C. § 301 ...............................................................................................7

50 U.S.C. § 1621(a) .....................................................................................5, 6

50 U.S.C. § 1622 ...........................................................................................6

50 U.S.C. § 1641 ...........................................................................................6

50 U.S.C. § 1662(d) .......................................................................................6

50 U.S.C. § 1701(a) .......................................................................................4

50 U.S.C. § 1702(a)(1)(B) ............................................................................4, 5

50 U.S.C. § 1702(b) .......................................................................................5

Act of May 28, 1926, ch. 411, 44 Stat. 669 ...............................................13

Customs Administration Act of 1890, ch. 407, 26 Stat. 131 .....................13

National Emergencies Act,
  Pub. L. No. 94-412, 90 Stat. 1255 (1976) ...............................................................5

**Other Authorities**

Local Rule 7.1(B) ...........................................................................................................1

**Treatises**

Amended Notice of Implementation of Additional Duties on Products of the
  People's Republic of China Pursuant to the President's February 1, 2025
  Executive Order Imposing Duties To Address the Synthetic Opioid Supply Chain
  in the People's Republic of China, 90 Fed. Reg. 9,431 (Feb. 12, 2025) ...............8

*Declaring a National Emergency at the Southern Border of the United States*,
  Proclamation No. 10886, 90 Fed. Reg. 8,327 (Jan. 20, 2025) ..............................7

*Designating Cartels and Other Organizations as Foreign Terrorist Organizations
  and Specially Designated Global Terrorists*, Exec. Order 14157, 90 Fed. Reg.
  8,439 (Jan. 20, 2025) ............................................................................................7

Executive Order 14195,
  90 Fed. Reg. 9,121 (Feb. 1, 2025) .......................................................................2

Executive Order 14228,
  90 Fed Reg. 11,463 (Mar. 3, 2025) ......................................................................3

*Further Amended Notice of Implementation of Additional Duties on Products of the
  People's Republic of China Pursuant to the President's Executive Order 14195,
  Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's
  Republic of China*, 90 Fed. Reg. 11,426 (Mar. 6, 2025) ......................................9

*Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the
  People's Republic of China*, Exec. Order 14,228, 90 Fed. Reg. 11,463 (Mar. 3,
  2025) ......................................................................................................................8

*Implementation of Additional Duties on Products of the People's Republic of China
  Pursuant to the President's February 1, 2025 Executive Order Imposing Duties*

*To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,038 (Feb. 5, 2025) ........................................................................8

*Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, Exec. Order 14195, 90 Fed. Reg. 9,121 (Feb. 7, 2025) .....7, 8

**Rules**

Nat'l Emergencies Act: Hr'gs Before the Subcomm. on Admin. Law and Governmental Relations, 94th Cong. (Mar. 6, 1975) ...........................................6

S. Rep. No. 94-922 (1976) ............................................................................5

S. Rep. No. 95-466 (1977) ............................................................................4

**MOTION TO TRANSFER**

Pursuant to 28 U.S.C. § 1631, defendants, Donald J. Trump, in his official capacity as President of the United States, the Executive Office of the President, the United States, Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security, the Department of Homeland Security (DHS), Pete R. Flores, in his official capacity as Acting Commissioner for U.S. Customs and Border Protection, and U.S. Customs and Border Protection (CBP), respectfully request the Court transfer this case to the United States Court of International Trade. This Court lacks jurisdiction to entertain this challenge because Congress has vested the subject matter of this suit within the exclusive jurisdiction of the Court of International Trade.

Pursuant to Local Rule 7.1(B), counsel for defendants conferred with counsel for plaintiff, Emily Ley Paper, Inc., d/b/a Simplified (Simplified), on this motion. Defendant's counsel contacted plaintiff's counsel by email on April 10, 2025, the parties met by phone on Monday April 14, 2025, and had subsequent email communications the same day. Counsel for plaintiff stated that plaintiff does not consent to this motion, and intends to file a response. Plaintiff's counsel also stated that plaintiff may file an amended complaint and proposed that we file our motion to transfer after an amended complaint is filed. Defendants considered the proposal but ultimately determined that the threshold question of transfer should be

raised as early as possible in the proceedings, so that the Court is aware of the issue before any additional filings are made.

## MEMORANDUM IN SUPPORT

## INTRODUCTION

In January, the President declared that the illegal trade of drugs such as fentanyl, and the resulting public-health crisis in the United States, constitute a national emergency under the National Emergencies Act.  In February, the President "expand[ed] the scope of the national emergency" to the People's Republic of China's (PRC) contribution to and responsibility for the crisis. Executive Order 14195, 90 Fed. Reg. 9,121, 9,122 (Feb. 1, 2025).  He found that the Chinese Communist Party has subsidized and otherwise incentivized PRC chemical companies to export fentanyl and related precursor chemicals that are used to produce synthetic opioids sold illicitly in the United States.  He further found that the PRC provides support to and safe haven for PRC-origin transnational criminal organizations that launder the revenues from the production, shipment, and sale of illicit synthetic opioids.

Using his broad powers under the International Emergency Economic Powers Act of 1977 (IEEPA) to regulate importation of foreign goods, the President took action to deal with the unusual and extraordinary threat to the United States's national security, foreign policy, and economy, ordering that certain

Chinese imports be assessed a 10% duty.  Because "the PRC has not taken

adequate steps to alleviate the illicit drug crisis," the President determined that the

tariffs should be increased to 20%.  Executive Order 14228, 90 Fed Reg. 11,463,

11,463 (Mar. 3, 2025).

Simplified alleges it is an importer of Chinese day planners and has suffered

injury by paying the duties the President has ordered.  Among other things,

Simplified challenges the President's authority to impose tariffs under IEEPA,

whether the tariffs are "necessary" to address the emergency, whether IEEPA

violates the nondelegation doctrine, and whether the Department of Homeland

Security's implementation of the orders is consistent with the Administrative

Procedure Act's (APA) requirements.  All of Simplified's arguments concern the

imposition of tariffs, over which the Court of International Trade has *exclusive*

jurisdiction.  Section 1631 of Title 28 of the U.S. Code requires transfer when there

is "a want of jurisdiction" in the original court and where the action "could have

been brought" in another court.  Because the Court of International Trade possesses

exclusive jurisdiction over the subject matter in Simplified's complaint, the case

should be transferred to the Court of International Trade for any further

proceedings, including any threshold challenges.

## STATEMENT OF FACTS

### I.    Legal Background

### A. The International Emergency Economic Powers Act

In 1977, Congress enacted IEEPA. *See* S. Rep. No. 95-466, at 1-2 (1977),

*reprinted in* 1977 U.S.C.C.A.N. 4540, 4541.  When adopting IEEPA, Congress

modified the existing Trading with the Enemy Act (TWEA) so that it applied only

in periods of war, but also extended the President's authority to periods of declared

national emergencies.  *See Regan v. Wald*, 468 U.S. 222, 227-28 (1984).  Although

the broad powers granted to the President under IEEPA are "essentially the same

as" those under its predecessor TWEA, *id.* at 228; *see Dames & Moore v. Regan*,

453 U.S. 654, 671-72 (1981) (IEEPA was "directly drawn" from the language of

TWEA), IEEPA provides authority to exercise those powers during peacetime, "to

deal with any unusual and extraordinary threat, which has its source in whole or

substantial part outside the United States, to the national security, foreign policy, or

economy of the United States," *see* 50 U.S.C. § 1701(a).  Once the President

declares a national emergency relating to such a threat, IEEPA empowers the

President to "regulate . . . importation . . . with respect to any property, subject to

the jurisdiction of the United States."  *Id.* § 1702(a)(1)(B).  In full, the relevant

subsection authorizes the President to:

> [R]egulate, direct and compel, nullify, void, prevent or
> prohibit, any acquisition, holding, withholding, use,

> transfer, withdrawal, transportation, importation or
> exportation  of, or dealing in, or exercising any right,
> power, or privilege with respect to, or transactions
> involving, any property in which any foreign country or a
> national thereof has any interest by any person, or with
> respect to any property, subject to the jurisdiction of the
> United States[.]

*Id.*  IEEPA also contains narrowly focused exceptions to this broad grant of

authority, *id.* §1702(b)(1)-(4), which, among other things, state that the President

may not regulate or prohibit "the importation from any country . . . of any

information or informational materials . . . ."  *Id.*  But none of the exceptions

involves the President's authority to impose tariffs to deal with a declared national

emergency.

### B. The National Emergencies Act

The NEA, Pub. L. No. 94-412, 90 Stat. 1255 (1976) (codified as amended at

50 U.S.C.§§ 1601-51), was an effort by Congress to "establish procedural

guidelines for the handling of future emergencies with provision for regular

Congressional review."  S. Rep. No. 94-922, at 1 (1976).  The statute includes

directives for Presidential declarations of national emergencies with respect to

statutes "authorizing the exercise, during the period of a national emergency, of

any special or extraordinary power."  50 U.S.C. § 1621(a).  Congress did not place

any conditions on the President's ability to declare a national emergency.  Instead,

Congress committed this determination to the President as "it would be wrong to

5

try to circumscribe with words what conditions a President might be confronted."
Nat'l Emergencies Act: Hr'gs Before the Subcomm. on Admin. Law and
Governmental Relations, 94th Cong. 27 (Mar. 6, 1975) (statement of Sen.
Mathias); *see also id.* at 31 ("[W]e didn't attempt to define it specifically because
we were afraid we would circumscribe the President's constitutional powers."); *id.*
at 27 (statement of Sen. Church) (similar).

Recognizing that a declaration of emergencies was essentially a political
question to be resolved by the political branches, Congress gave itself the exclusive
oversight authority over a President's national emergency declaration.  For
instance, Congress directs that a declaration of a national emergency be
"immediately … transmitted to the Congress and published in the Federal
Register."  50 U.S.C. § 1621(a).  Congress also directs the President to comply
with congressional reporting requirements pertaining to that declaration.  *Id.*
§ 1641(a)-(c).  Congress may terminate a national emergency through a joint
resolution that is subject to fast-track procedures, and Congress is directed to meet
"[n]ot later than six months after a national emergency is declared," and every six
months thereafter, to consider whether the emergency shall be terminated.  *Id.* §
1622(a)-(c).  A declaration of a national emergency also "terminate[s] on the
anniversary of the declaration" unless the President provides notice to Congress
that the emergency "continue[s]."  *Id.* § 1662(d).

6

## II.    Factual Background

In January 2025, the President declared the flow of contraband drugs like fentanyl to the United States through illicit distribution networks, and the resulting public-health crisis, to be a national emergency. *See Declaring a National Emergency at the Southern Border of the United States*, Proclamation No. 10886, 90 Fed. Reg. 8,327 (Jan. 20, 2025); *Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists*, Exec. Order 14157, 90 Fed. Reg. 8,439 (Jan. 20, 2025).

On February 1, 2025, the President took additional action under IEEPA, the National Emergencies Act, section 604 of the Trade Act of 1974, as amended (19 U.S.C. § 2483), and 3 U.S.C. § 301, to specifically address the unusual and extraordinary threat from the PRC, including the PRC's failures to stem the flow of contraband drugs to the United States. *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, Exec. Order 14195,  90 Fed. Reg. 9,121 (Feb. 7, 2025).  The President found that the PRC failed "to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [Transnational Criminal Organizations], criminals at large, and drugs." *Id.* at 9,122.  To address the national emergency, the President took "decisive and immediate action" under IEEPA and "decided to impose, consistent

with law, ad valorem tariffs on articles that are products of the PRC as set forth in this order." *Id.*

The President then imposed a 10% *ad valorem* duty rate on most goods imported from the PRC and authorized DHS to take any necessary actions to implement the order. *Id.* at 9,122-23. DHS, through CBP, did so shortly thereafter. *See Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1, 2025 Executive Order Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,038 (Feb. 5, 2025) (implementing the 10% duty through amendments to the Harmonized Tariff Schedule of the United States set out in an Annex to the Federal Register notice)*; Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1, 2025 Executive Order Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,431 (Feb. 12, 2025). On March 3, 2025, the President amended the order to increase the amount of duty to 20%. *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, Exec. Order 14,228, 90 Fed. Reg. 11,463 (Mar. 3, 2025); *Further Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's Executive Order 14195, Imposing Duties to Address the*

8

*Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,426 (Mar. 6, 2025) (implementing the 20% duty through amendments to the Harmonized Tariff Schedule of the United States set out in an Annex to the Federal Register notice).

On April 3, 2025, Simplified filed a complaint in this Court requesting declaratory and injunctive relief.  It alleges that it is a Florida corporation that imports planners and home management products from the PRC to sell in the United States.  Compl. ¶ 15.  According to the complaint, Simplified has paid more in tariffs on its imported products, and the tariffs have injured it "in the form of higher costs, competitive disadvantage, and lost profits."  Compl. ¶ 8.  Simplified alleges that IEEPA does not permit the President to impose tariffs in response to a declared emergency and that, even if it did, the tariffs here are not "necessary" under the statute.  Compl. ¶¶ 45-55, 57-67.  Additionally, Simplified alleges that IEEPA violates the nondelegation doctrine.  Compl. ¶¶ 69-75.  Simplified also alleges that DHS's actions  implementing the orders by modifying the U.S. Harmonized Tariff Schedule (HTSUS) are contrary to law.  Compl. ¶¶ 10(d), 42-43, 76-80.

As a remedy, Simplified requests a declaration that:  (1) the President's Executive Orders were either unauthorized under IEEPA, or that IEEPA violates the nondelegation doctrine; and (2) the resulting HTSUS modifications are

therefore unlawful under the APA.  Beyond declaratory relief, Simplified requests

vacatur of the HTSUS modifications, as well as a permanent injunction enjoining

DHS and CBP from implementing or enforcing the Executive Orders or the

resulting modifications to the HTSUS.  Finally, Simplified requests attorney fees

under the Equal Access to Justice Act.  Compl. at Prayer for Relief A-E.

### STANDARD OF REVIEW

Under 28 U.S.C. § 1631, whenever a civil action is filed and a court finds

"there is a want of jurisdiction, the court shall, if it is in the interest of justice,

transfer such action  . . . to any other such court  . . . in which the action or appeal

could have been brought at the time it was filed . . . ."   When another court has

exclusive jurisdiction over a claim filed in district court transfer is the proper

recourse.  *See Jan's Helicopter Serv. Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299,

1304 (Fed. Circ. 2008).

When courts are faced with conflicts between the broad grants of jurisdiction

to the district courts and the grant of exclusive jurisdiction to the Court of

International Trade, they should "resolve those conflicts by 'upholding the

exclusivity of the Court of International Trade's jurisdiction.'"  *United States v.*

*Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 836 (9th Cir. 2004) (cleaned

up).  Accordingly, when the Court of International Trade appears to have subject-

matter jurisdiction over an action filed in district court, "the prudent thing to do is

to … transfer the case to the [Court of International Trade] so that [it] can determine the question of its own jurisdiction." *Pentax Corp. v. Myhra*, 72 F.3d 708, 711 (9th Cir. 1995); *see also Pat Huval's Fisherman Wharf v. Int'l Trade Comm'n*, 2006 WL 2460846 (W.D. La. 2006) (transferring a matter within the exclusive jurisdiction of the Court of International Trade). Such transfer is accomplished through 28 U.S.C. § 1631. Congress enacted section 1631 as Section 301(a) of the Federal Courts Improvement Act of 1982 (FCIA). *See Dornbusch v. C.I.R.*, 860 F.2d 611, 612-13 (5th Cir. 1988). The FCIA enhances access to justice by allowing a case filed in the wrong court to be transferred as if it had been filed in the transferee court on the date in which it was filed in the transferor court. *Id.*

## ARGUMENT

### I.     Transfer Is Required Because the Court of International Trade Has Exclusive Subject Matter Jurisdiction over Simplified's Complaint

This Court lacks jurisdiction to hear this case and should promptly transfer it to the Court of International Trade.

The Court of International Trade possesses "exclusive jurisdiction" over "any civil action commenced against" federal agencies or officers that "arises out of any law of the United States providing for  . . . tariffs, duties, fees or other taxes on the importation of merchandise for reasons other than the raising of revenue" or under any law providing for "revenue from imports." 28 U.S.C.

11

§ 1581(i)(1)(A), (B).  The Court of International Trade also has exclusive

jurisdiction over any civil action arising out of any law "providing for

administration and enforcement with respect to the matters referred to in" any

preceding provision of section 1581(i)(1).  *Id.* § 1581(i)(1)(D).  To emphasize

that the district courts lacks concurrent jurisdiction over these specialized subject

matters, Congress separately provided that "[t]he district courts shall not have

jurisdiction under this section of any matter within the exclusive jurisdiction of

the Court of International Trade . . . ." *Id.* § 1337(c).

The Supreme Court has confirmed that these statutes mean exactly what

they say.  When one of the "grants of exclusive jurisdiction to the Court of

International Trade" applies, all other district courts are "divested of jurisdiction"

over the action.  *K-Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 182-83 (1988).

Other courts similarly agree that "[s]ection 1581(i) removes specific actions from

the general federal-question jurisdiction of the district courts (under 28 U.S.C. §

1331) and places them in the jurisdiction of the Court of International Trade."

*Orleans Int'l, Inc. v. United States*, 334 F.3d 1375, 1378 (Fed. Cir. 2003); *see also*

*Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1586 (Fed. Cir.

1994); *Miami Free Zone Corp. v. Foreign Trade Zones Bd.*, 22 F.3d 1110, 1112

(D.C. Cir. 1994). Thus, where Congress has provided that the Court of

International Trade is the exclusive forum for challenges to tariffs imposed on imported merchandise, the district courts have no power to act.

The Court of International Trade's exclusive jurisdiction over tariff cases serves an important function:  it consolidates this area of law "in one place . . . with an already developed expertise in international trade and tariff matters," thus ensuring a "degree of uniformity and consistency."  *Conoco*, 18 F.3d at 1586. Consolidating tariff matters in a single jurisdiction protects the constitutional requirement that "[a]ll Duties, Imposts, and Excises shall be uniform throughout the United States."  U.S. Const., art. 1, § 8, cl. 1.  If tariff challenges like those raised by Simplified could be brought in any (or every) district court, there would be a risk of inconsistent results and different tariffs imposed in different regions of the country, in direct conflict with Congress's statutory design.  Indeed, Congress has consistently placed judicial review of tariff matters in a single forum, beginning with the Board of Appraisers in 1890, *see* Customs Administration Act of 1890, ch. 407, 26 Stat. 131; then the Customs Court in 1926, *see* Act of May 28, 1926, ch. 411, 44 Stat. 669; and finally today's Court of International Trade.

Reflecting the exclusive jurisdiction statutes and their underlying purposes of ensuring uniformity, the Court of International Trade's exclusive jurisdiction is broad, encompassing constitutional challenges to tariffs, duties, exactions, and embargoes. *See*, *e.g.*, *U.S. Shoe Corp. v. United States,* 523 U.S. 360 (1998)

13

(constitutional challenge to Harbor Maintenance Fee); *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1350-51 (Fed. Cir. 2010) (constitutional challenge to Tariff Schedules of the United States); *cf. Arjay Associates, Inc. v. Bush*, 891 F.2d 894 (Fed. Cir. 1989) (constitutional challenge to embargo on imports from certain Japanese companies); *see also Commodities Export Co. v. U.S. Customs Serv.*, 957 F.2d 223, 229-30 (6th Cir. 1992).

Its exclusive jurisdiction also includes challenges to Presidential proclamations imposing duties. *See, e.g., Transpacific Steel LLC v. United States*, 4 F.4th 1306 (Fed. Cir. 2021) (Presidential proclamation imposing tariffs on steel under section 232 of the Trade Expansion Act of 1962); *Solar Energy Indus. Assn. v. United States*, 111 F.4th 1349 (Fed. Cir. 2024) (Presidential proclamation imposing tariffs on solar panels pursuant to section 201 of Trade Act of 1974); *Silfab Solar, Inc. v. United States*, 892 F.3d 1340 (Fed. Cir. 2018) (Presidential proclamation imposing section 201 tariffs on solar panels); *Michael Simon Design Inc. v. United States*, 609 F.3d 1335 (Fed. Cir. 2010) (Presidential proclamation modifying tariff schedules); *Motion Systems Corp. v. Bush*, 437 F.3d 1356 (Fed. Cir. 2006) (*en banc*) (Presidential proclamation declining to impose China-specific safeguard tariff); *Corus Group PLC v. Int'l Trade Comm'n*, 352 F.3d 1351 (Fed. Cir. 2003) (Presidential proclamation imposing duties on certain steel products based on section 201); *Maple Leaf Fish Co. v. United States*, 762 F.2d

14

86 (Fed. Cir. 1985) (Presidential proclamation imposing duties on mushrooms based on section 201).

Here, Simplified challenges the President's authority to impose tariffs under IEEPA, whether the tariffs are "necessary" to address the stated emergency, whether IEEPA violates the nondelegation doctrine, and DHS's actions to implement the President's Executive Orders under the APA. Each of these questions, including all threshold questions, falls squarely within the exclusive subject matter jurisdiction of the Court of International Trade because they arise out of laws providing for tariffs or the administration or enforcement of those laws. 28 U.S.C. § 1581(i)(1)(B), (D). This Court thus lacks jurisdiction over the case and should transfer it to the Court of International Trade.

This is precisely how similar cases have been treated. Under TWEA (IEEPA's predecessor), the Ninth Circuit transferred a claim about the imposition of a 10% duty on imports to the Court of Customs and Patent Appeals (a predecessor to the Court of Appeals for the Federal Circuit, which heard all trade appeals from the U.S. Customs Court—the predecessor to the Court of International Trade). *See Cornet Stores v. Morton*, 632 F.2d 96, 99-100 (9th Cir. 1980) (affirming district court's decision that claim seeking recovery of duties paid pursuant to order authorized under TWEA fell within exclusive jurisdiction of the Customs Court); *accord Earth Island Institute v. Christopher*, 6 F.3d 648, 651 (9th

Cir. 1990) (holding that challenge to embargo provision fell exclusively within Court of International Trade's jurisdiction under § 1581(i)). Along the same lines, the Court of Customs and Patent Appeals also adjudicated another TWEA matter brought in the correct forum. *See, e.g.*, *United States v. Yoshida Int'l*, 526 F.2d 560 (C.C.P.A. 1975); *accord Alcan Sales, Div. of Alcan Aluminum Corp. v. United States*, 693 F.2d 1089 (Fed. Cir. 1982).

In fact, the Court of International Trade is currently considering two similar challenges to the President's authority under IEEPA. *Barnes v. United States*, No. 25-0043, ECF No. 3 (Compl.); *VOS Selections Inc. v. Trump*, No. 25-00066 (ECF No. 2 (Compl.). In both cases, plaintiffs, like Simplified, claim that the President was not authorized to impose tariffs under IEEPA. And while the United States has asked the court to dismiss the complaint in *Barnes* for lack of standing because Mr. Barnes has not established harm, for the reasons stated above, the consideration of whether to dismiss belongs exclusively to the Court of International Trade. *See Barnes*, ECF No. 9.

Moreover, over the last several years, the Court of International Trade has entertained thousands of challenges to various Presidential actions imposing tariffs. *See, e.g.*, *HMTX Indus. v. United States*, No. 20-00177 (Ct. Int'l Trade), appeal filed, No. 23-1891, ECF No. 5 (Fed. Cir. May 25, 2023) (identifying the 4,100 similar cases stayed pending resolution of the appeal). Likewise, the Court of

International Trade routinely exercises jurisdiction under 28 U.S.C. § 1581(i) to review agency determinations under the APA. *See, e.g.*, *Sea Shepherd New Zealand v. United States*, No. 20-00112 (Ct. Int'l Trade); *Maui and Hector's Dolphin Defenders NZ Inc. v. Nat'l Marine Fisheries Svc.*, No. 24-00218 (Ct. Int'l Trade).

This complaint should be treated no differently. Because only the Court of International Trade has jurisdiction to hear a dispute regarding the imposition of tariffs, this Court lacks jurisdiction, so it is in the interest of justice to promptly transfer this action to the Court of International Trade. 28 U.S.C. § 1631.

## CONCLUSION

For these reasons, defendants respectfully request that the Court transfer Simplified's complaint in its entirety to the Court of International Trade.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

OF COUNSEL:

ALEXANDER K. HAAS
Director
STEPHEN M. ELLIOTT
Assistant Director
U.S. Department of Justice
Civil Division
Federal Programs Branch

/s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

17

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

SOSUN BAE
Senior Trial Counsel
MICHELLE SPAVEN                     LUKE MATHERS
Acting United States Attorney       BLAKE W. COWMAN
JOHN C. SPACCAROTELLA               Trial Attorneys
Assistant United States Attorney    U.S. Department of Justice
NY Reg No. 4304291                  Civil Division
111 N. Adams Street, 4th Fl.        Commercial Litigation Branch
Tallahassee, FL 32301               1100 L St. NW
(850) 216-3862                      Washington, D.C. 20005
                                    202-353-9063
April 14, 2025                      Claudia.burke@usdoj.gov
                                    *Counsel for Defendants*

**LOCAL RULE 7.1(B) CERTIFICATION**

I HEREBY CERTIFY that on April 14, 2025, I conferred with counsel for Plaintiff by telephone regarding this Motion, and then by email communications afterwards, and Plaintiff opposes the relief sought herein.

*/s/ Claudia Burke*
CLAUDIA BURKE

**LOCAL RULE 7.1(F) CERTIFICATION**

I HEREBY CERTIFY that this memorandum contains 3770 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

*/s/ Claudia Burke*
CLAUDIA BURKE

**LOCAL RULE 5.1(F) CERTIFICATION**

I HEREBY CERTIFY that a copy of the foregoing has been furnished via CM/ECF to all interested parties, this 14th day of April, 2025.

*/s/ Claudia Burke*
CLAUDIA BURKE

19