UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| EMILY LEY PAPER, INC., d/b/a<br>SIMPLIFIED,<br><br>       *Plaintiff,*<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity<br>as President of the United States; EXECUTIVE<br>OFFICE OF THE PRESIDENT; UNITED<br>STATESOF AMERICA; KRISTI NOEM,<br>in her official capacity as Secretary of the<br>U.S. Department of Homeland Security;<br>DEPARTMENT OF HOMELAND SECURITY;<br>PETE R. FLORES, in his official capacity<br>as Acting Commissioner for U.S. Customs and<br>Border Protection; and U.S. CUSTOMS<br>AND BORDER PROTECTION,<br><br>       *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:25-cv-00464 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER**

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

OF COUNSEL:

ALEXANDER K. HAAS
Director

STEPHEN M. ELLIOTT
Assistant Director
U.S. Department of Justice

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

Civil Division
Federal Programs Branch

MICHELLE SPAVEN
Acting United States Attorn
JOHN C. SPACCAROTELLA
Assistant United States Attorney
NY Reg No. 4304291
111 N. Adams Street, 4th Fl.
Tallahassee, FL 32301
(850) 216-3862

May 19, 2025

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

SOSUN BAE
Senior Trial Counsel
LUKE MATHERS
BLAKE W. COWMAN
CATHERINE M. YANG
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St. NW
Washington, D.C. 20005
202-353-9063
Claudia.burke@usdoj.gov
*Counsel for Defendants*

# TABLE OF CONTENTS

I.    IEEPA's Text, Context, And History Confirm That It
      Authorizes Tariffs ................................................................... 1

II.   The Court Of International Trade Continues To Exercise
      Jurisdiction Over Three Similar Challenges ...................................... 13

CONCLUSION ........................................................................ 14

# TABLE OF AUTHORITIES

## CASES

*Ala. Ass'n of Realtors v. HHS*,
594 U.S. 758 (2021) ...................................................................................10

*Alcan Sales v. United States*,
693 F.2d 1089 (Fed. Cir. 1982) .................................................................3

*Almendarez-Torres v. United States*,
523 U.S. 224 (1998) ...................................................................................12

*Biden v. Nebraska*,
600 U.S. 477 (2023) ...................................................................................11

*B-West Imports v. United States*,
75 F.3d 633 (Fed. Cir. 1996) ................................................................6, 9

*Chevron U.S.A. Inc. v. NRDC*,
467 U.S. 837 (1984) .....................................................................................3

*Cornet Stores v. Morton*,
632 F.2d 96 (9th Cir. 1980) ......................................................................3

*Ctr. for Biological Diversity v. EPA*,
937 F.3d 533 (5th Cir. 2019) ..................................................................12

*Dames & Moore v. Regan*,
453 U.S. 654 (1981) ................................................................................4, 5

*NFIB v. Dep't of Lab.*,
595 U.S. 109 (2022) .....................................................................................8

*Dep't of Navy v. Egan*,
484 U.S. 518 (1988) .....................................................................................9

*Earth Island Institute v. Christopher*,
6 F.3d 648 (9th Cir. 1993) ......................................................................11

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014) .....................................................................................9

*Fed. Energy Admin. v. Algonquin SNG,*
    426 U.S. 548 (1976) ..............................................................................6

*Florsheim Shoe Co., Div. of Interco v. United States,*
    744 F.2d 787 (Fed. Cir. 1984)...............................................................6

*Georgia v. Public.Resource.Org,*
    590 U.S. 255 (2020) ..............................................................................5

*Gundy v. United States,*
    588 U.S. 128 (2019) ............................................................................12

*Johnson v. United States,*
    559 U.S. 133 (2010) ..............................................................................7

*Loper Bright Enterprises v. Raimundo,*
    603 U.S. 369 (2024) ..............................................................................3

*QBE Syndicate 1306 v. Compass Mins.Louisiana, Inc.,*
    95 F.4th 984 (5th Cir. 2024) ..................................................................8

*Regan v. Wald,*
    468 U.S. 222 (1984) ..............................................................................4

*Rowe v. Schreiber,*
    139 F.3d 1381 (11th Cir. 1998)...........................................................12

*Seila Law v. CFPB,*
    591 U.S. 197 (2020) ..............................................................................9

*Stanley v. Sanford,*
    83 F.4th 1333 (11th Cir. 2023)............................................................13

*Trump v. Hawaii,*
    585 U.S. 667 (2018) ............................................................................10

*United States v. Shih,*
    73 F.4th 1077 (9th Cir. 2023) ..............................................................12

*United States v. Spawr Optical Rsch.,*
    685 F.2d 1076 (9th Cir. 1982)...............................................................3

*United States v. Yoshida Int'l, Inc.,*
    526 F.2d 560 (C.C.P.A. 1975)............................................... 2, 5, 7, 12

*Van Loon v. Dep't of the Treasury*,
  122 F.4th 549 (5th Cir. 2024) ...................................................................11

*West Virginia v. EPA*,
  597 U.S. 697 (2022) ...........................................................8, 9, 11, 12

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) ...................................................................10

## STATUTES

19 U.S.C. §1862 ...................................................................7

19 U.S.C. §1862(c) ...................................................................6,7

19 U.S.C. § 3512 ...................................................................7

28 U.S.C. § 255 ...................................................................13

28 U.S.C. § 1581(i) ...................................................................11

50 U.S.C. §1702(a) ...................................................................7

50 U.S.C. §1702(a)(1)(B) ...................................................................2, 4

50 U.S.C. §§1701(a) ...................................................................10

U.S. Const. art. I...................................................................7

## DEFENDANTS' REPLY IN SUPPORT OF
## THEIR MOTION TO TRANSFER

Pursuant to the Court's May 8 order, defendants submit this reply in support of their motion to transfer this case to the Court of International Trade (CIT). Because the Court granted defendants' motion to reply in light of plaintiffs' presentation of the merits in their opposition brief, defendants do not here reiterate, but continue to maintain, the arguments in our transfer motion. *See* Mot.10-11, 15-17. Regardless, the merits confirm that the CIT has exclusive jurisdiction.

## I.    IEEPA's Text, Context, And History Confirm That It Authorizes Tariffs

Plaintiffs challenge the President's authority to impose tariffs under the International Emergency Economic Powers Act (IEEPA), but they misconstrue IEEPA's plain meaning, context, history, and purpose.

1.    IEEPA's plain text authorizes the President to impose tariffs. When a national emergency is declared:

> [T]he President may, under such regulations as he may prescribe, by means of instructions, licenses, or otherwise ... investigate, block during the pendency of an investigation, *regulate*, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, *importation* or exportation of, or dealing in ... *any property* in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States.

1

50 U.S.C. §1702(a)(1)(B) (emphases added). The power to "regulate ... importation" of foreign goods includes the power to impose tariffs, which set the terms on which foreign goods enter the United States. Setting such terms falls squarely within the definition of "regulate," both now and when IEEPA was enacted. *See, e.g.*, *Regulate*, Black's Law Dictionary (12th ed. 2024) ("To control (an activity or process) esp. through the implementation of rules"); *Regulate*, Black's Law Dictionary 1156 (5th ed. 1979) ("[F]ix, establish or control; to adjust by rule, method, or established mode; to direct by rule or restriction; to subject to governing principles or laws"); *Regulate*, Random House College Dictionary 1112 (rev. ed. 1975) ("[T]o control or direct by a rule, principle, method, etc."); *Regulate*, American Heritage Dictionary (1976) ("To control or direct according to a rule"); *Regulate*, Webster's Third New International Dictionary (1976) ("[T]o govern or direct according to rule; to bring under the control of law or constituted authority").

Precedent confirms this straightforward reading. Interpreting identical language in IEEPA's predecessor statute, the Trading with the Enemy Act (TWEA), the Federal Circuit's predecessor upheld a tariff imposed by President Nixon, explaining that the phrase "regulate importation" permitted the President to "impos[e] an import duty surcharge." *United States v. Yoshida Int'l, Inc.*, 526 F.2d

560, 576 (C.C.P.A. 1975)[1]; *accord Alcan Sales v. United States*, 693 F.2d 1089, 1093 (Fed. Cir. 1982)[2]; *United States v. Spawr Optical Rsch.*, 685 F.2d 1076, 1081 n.10 (9th Cir. 1982).

2.    Statutory context reinforces this conclusion. The power to "regulate" imports by imposing tariffs is similar to the other powers granted in IEEPA's §1702(a)(1)(B), like the power to "block" the import of goods during an investigation, or the power to "prevent or prohibit" those imports. Each of these terms grants the President a significant power over foreign commerce. And many partially overlap, suggesting that Congress entrusted the President with wide-ranging powers over imports rather than carefully picking and choosing isolated types of interventions.

Plaintiffs contend that these enumerated powers are all "synonyms" functionally distinct from the power to impose tariffs, thus indicating that Congress did not mean to authorize the imposition of tariffs. Resp.12. But they

---

[1]    Plaintiffs argue that *Yoshida* was wrongly decided after *Loper Bright Enterprises v. Raimundo*, 603 U.S. 369 (2024), Resp.22, but *Yoshida* was decided before *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837 (1984), so could not have performed its analysis under the now-overturned interpretive scheme. Plaintiffs also ignore the Supreme Court's holding that precedent preceding *Loper* is not to be reconsidered. 603 U.S. at 412.

[2]    Plaintiffs mistakenly contend that the courts in *Alcan Sales* and *Cornet Stores v. Morton*, 632 F.2d 96 (9th Cir. 1980), did not "base[] jurisdiction on IEEPA." Resp.24. In *Cornet*, the Ninth Circuit held that tariffs imposed under TWEA should be heard in the trade court. *Alcan Sales*, also a tariff case under TWEA, was correctly brought in the trade court.

3

ignore *Yoshida*'s opposite conclusion, issued by the court with nationwide and exclusive jurisdiction over trade matters.

Plaintiffs' further ignore the history of the provision. Congress drew the "regulate … importation" language directly from TWEA. *See* Dec. 18, 1941, ch. 593, title III, §301, 55 Stat. 839 (authorizing the President to "investigate, *regulate . . . importation* or exportation of, or dealing in …" (emphases added)); 50 U.S.C. §1702(a)(1)(B).

The Supreme Court has repeatedly recognized the close relationship between the substantive powers conferred by IEEPA and TWEA. *See, e.g.*, *Dames & Moore v. Regan*, 453 U.S. 654, 671-72 (1981) (the pertinent section of IEEPA's language was "directly drawn" from TWEA); *Regan v. Wald*, 468 U.S. 222, 228 (1984) ("[T]he authorities granted to the President [under] IEEPA are essentially the same as those [under] TWEA.").

Congress chose to use the same language in IEEPA knowing that the CCPA had interpreted identical language in TWEA to authorize imposing tariffs by the President. The House Report on IEEPA cited *Yoshida* and explained its holding. H.R. Rep. No. 95-459, at 5. It recounted that "section 5(b) [of TWEA] came into play" when President Nixon "imposed a surcharge on imports," that the Customs Court first held that "section 5(b) … did not" permit "imposition of duties," but

4

that "the Appeals Court reversed." *Id.* Aware of that history, Congress chose to adopt the same language in IEEPA.

The language Congress drew directly from TWEA carries the same meaning in IEEPA. "[W]hen Congress 'adopt[s] the language used in [an] earlier act,'" courts "presume that Congress 'adopted also the construction given'" to that language. *Georgia v. Public.Resource.Org*, 590 U.S. 255, 270 (2020). The Supreme Court has recognized this by applying TWEA precedent to interpret IEEPA. *See Dames*, 453 U.S. at 672.

3.    IEEPA's purpose confirms that it includes the power to impose tariffs. The purpose of emergency statutes, like IEEPA, is to give the President broad and flexible powers to effectively address problems associated with a national emergency. "[T]he primary implication of an emergency power is that it should be effective to deal with a national emergency successfully." *Yoshida*, 526 F.2d at 573. IEEPA's delegation, like TWEA, "is broad and extensive; it could not have been otherwise if the President were to have … the flexibility required to meet problems surrounding a national emergency with the success desired by Congress." *Id.* Interpreting IEEPA to include the power to impose tariffs furthers Congress's purpose to give the President the necessary tools and flexibility to effectively handle emergencies.

Especially in this context. When it comes to foreign affairs, "broad grants by Congress of discretion to the Executive are common." *Florsheim Shoe Co., Div. of Interco v. United States*, 744 F.2d 787, 795 (Fed. Cir. 1984). IEEPA "is intimately involved with foreign affairs, an area in which congressional authorizations of presidential power should be given a broad construction and not hemmed in or cabined, cribbed, confined by anxious judicial blinders." *Id.* at 793 (cleaned up); *see, e.g.*, *B-West Imports v. United States*, 75 F.3d 633, 636 (Fed. Cir. 1996) ("statutes granting the President authority to act in matters touching on foreign affairs are to be broadly construed").

4.     Plaintiffs seek to narrow IEEPA's plain text by pointing to statutes that use different language to authorize the President to impose tariffs in certain non-emergency circumstances. Resp.13-14. Plaintiffs are wrong: Congress used similarly broad language to permit imposing tariffs in section 232. *See* 19 U.S.C. §1862(c) ("adjust … imports"); *Fed. Energy Admin. v. Algonquin SNG*, 426 U.S. 548, 562 (1976) (Section 232's "adjust … imports" means that "the President's authority extends to the imposition of monetary exactions, i.e., license fees and duties."). Plaintiffs provide no meaningful explanation for why "regulate … importation" cannot authorize tariffs but "adjust … imports" does. Plaintiffs' omission is unsurprising because plaintiffs *agree* that "regulate" means "adjust." Resp.10. A tariff controls importation "as much as a quota" would, because both

6

actions have "initial and direct impact on imports." *Algonquin*, 426 U.S. at 571; *see Yoshida*, 526 F.2d at 575 & n.20 ("it is well established that" the power to "lay duties upon imports" "can be employed in the exercise" of "the power to regulate commerce"). Regardless, that Congress has elsewhere used narrower language to convey a non-emergency power says little about the meaning of the broader language it used in TWEA or IEEPA. *See Yoshida*, 526 F.2d at 578 ("trade acts" that do not involve "national emergency powers" did not narrow TWEA's scope).[3]

Plaintiffs also point to the Constitution, Resp.10-11, but plaintiffs' attempts to mismatch snippets from the Constitution to misread IEEPA are impermissibly acontextual. *See Johnson v. United States*, 559 U.S. 133, 139 (2010) ("Ultimately, context determines meaning"). IEEPA's text critically differs from the Constitution, as do its context, history, and purpose. IEEPA empowers the President to "regulate … *importation*," 50 U.S.C. §1702(a) (emphasis added), not "regulate Commerce with foreign nations," U.S. Const. art. I, § 8, cl. 3. "Regulate" is a transitive verb and

---

[3]    Plaintiffs argue that when authorizing the United States to join the World Trade Organization in the Uruguay Round Agreements Act (URAA), Congress would have required modifications to IEEPA had it believed the statute authorized the President to impose tariffs. *See* Resp.14-15. Plaintiffs presume that because the United States was required to amend certain tariff statutes to come into compliance with the WTO Agreements, it was required to amend all such statutes in the URAA. That simply was not the case. In fact, Section 102(a)(2)(B) of the URAA states that, unless otherwise provided, nothing in the WTO Agreements shall be construed "to limit any authority conferred under any law of the United States, including section 301 of the Trade Act of 1974." 19 U.S.C. § 3512. Furthermore, the WTO Agreement provides that it does not prevent WTO Member States from taking measures to protect their essential security interests, which is why IEEPA and other national-security trade statutes like section 232 needed no modification. *See* Resp.14-15 (also not showing an amendment to 19 U.S.C. §1862).

requires an object to complete its meaning; that IEEPA and the Constitution have different objects ("importation" and "commerce," respectively) shows that the difference in text matters. *See, e.g.*, *QBE Syndicate 1036 v. Compass Mins. Louisiana, Inc.*, 95 F.4th 984, 995 (5th Cir. 2024) ("The subsequent verbs … are clearly transitive and require an object to complete the thought."). And unlike the Constitution, the term "regulate" in IEEPA comes within a list of other broad terms that reinforce the term's breadth.

5.    In plaintiffs' view, the Court should not presume that Congress delegated authority to the President because of the "unprecedented" and "vast … economic significance" of the tariffs. Resp.15, 17. But the major-questions doctrine does not apply here and, even if it did, it would not help plaintiffs anyway.

At the threshold, the major-questions doctrine does not apply because "the statute at issue" does not "confer[] authority upon an administrative agency." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022). IEEPA confers authority on the President. The Supreme Court has never applied the major-questions doctrine to a statute delegating power to the President, let alone one involving national security and foreign affairs. It has instead described the doctrine as applicable to statutes giving authority to agencies. *See NFIB v. Dep't of Lab.*, 595 U.S. 109, 125 (2022) (Gorsuch, J., concurring) (allowing Congress to "hand off all its legislative powers to unelected agency officials" would replace "government by the people" with "government by

bureaucracy" (citation omitted)). No political-accountability justification applies here, where "the Framers made the President the most democratic and politically accountable official in Government," *Seila Law v. CFPB*, 591 U.S. 197, 224 (2020), and the President directs an action in an executive order. And the President's overlapping powers in the national-security and foreign-affairs realm diminish any concerns of unauthorized overreach.

Similarly, the major-questions doctrine does not apply to national-security and foreign-policy matters and especially not when those matters are delegated to the President. A major-questions approach treats a decision with a "measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). That approach is irreconcilable with longstanding precedent compelling the opposite approach in these contexts. *See, e.g.*, *Trump v. Hawaii*, 585 U.S. 667, 686 (2018) (acknowledging "the deference traditionally accorded the President" on these matters); *Dep't of Navy v. Egan*, 484 U.S. 518, 529-30 (1988) (recounting the "utmost deference to Presidential responsibilities" courts have "traditionally shown" in these matters); *B-West*, 75 F.3d at 636. So, in this area, unlike in plaintiffs' major-questions cases, Resp.16, there is no "reason to hesitate before concluding that Congress meant to confer" significant authority to regulate foreign commerce on the President. *West Virginia*, 597 U.S. at 721 (cleaned up).

Even if the major-questions doctrine were not categorically inapplicable, plaintiffs press no persuasive argument that it would apply to the challenged tariffs. The Supreme Court has identified several traits of regulatory action that, in combination, implicate the major-questions doctrine when an agency takes a sufficiently significant action. No one doubts the significance of the challenged tariffs, but significance alone does not implicate the major-questions doctrine; otherwise, it would apply to countless government actions, including every emergency statute.

Plaintiffs point to the CDC's eviction moratorium, which presented a major question when the CDC attempted to transform its regulatory power by acting far outside its typical expertise based on a catch-all phrase in a statute. Resp.17 (citing *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021)). Unlike the CDC's attempt to regulate "the landlord-tenant relationship" in response to the COVID-19 pandemic, *Ala. Ass'n*, 594 U.S. at 764, IEEPA directs the President to exercise power well within his expertise. In IEEPA, Congress charged the President with identifying a "national security, foreign policy, or econom[ic]" emergency and responding with a litany of expansive powers implicating foreign policy. 50 U.S.C. §§1701(a), 1702. Such matters are "the prerogative of Congress and the President." *Ziglar v. Abbasi*, 582 U.S. 120, 142 (2017).

Nor is the President's use of IEEPA an exercise of "unheralded power," especially given the President's exercise of his tariff power five decades ago under materially identical language in IEEPA's predecessor. *West Virginia*, 597 U.S. at 724; *see* Resp.18. Likewise, the President's challenged actions accord with a robust history of similar exercises of power under IEEPA to achieve foreign-policy objectives by regulating imports and exports—often with more severe measures like total or near-total embargoes.[4] *See, e.g.*, Executive Order 13873, 84 Fed. Reg. 22,689 (May 15, 2019) (invoking IEEPA to bar the "importation … of any information and communications technology" "designed, developed, manufactured, or supplied, by persons owned by, controlled by, or subject to the jurisdiction or direction of a foreign adversary").

Regardless, IEEPA easily passes the major-question doctrine's clear-authorization standard. Though the major-questions doctrine requires "clear congressional authorization," *West Virginia*, 597 U.S. 697, the standard is not a magic-words requirement, *see Biden v. Nebraska*, 600 U.S. 477, 511 (2023) (Barrett, J., concurring) (unlike true "clear-statement" rules, major-questions doctrine does

---

[4]  We agree with plaintiffs, Resp.25, that *Earth Island Institute v. Christopher*, 6 F.3d 648 (9th Cir. 1993) (holding jurisdiction over an Endangered Species Act embargo lay in the CIT), confirms that 28 U.S.C. § 1581(i) does not draw every IEEPA case into the CIT's exclusive jurisdiction. Some challenges to IEEPA actions, such as those that do not arise out of IEEPA's provision for tariffs, are reviewable in other district courts. *See Van Loon v. Dep't of the Treasury*, 122 F.4th 549 (5th Cir. 2024) (addressing whether a crypto-transaction software protocol can be the target of economic sanctions).

not require "an 'unequivocal declaration' from Congress authorizing the precise agency action under review"); *West Virginia*, 597 U.S. at 723 ("something more than a merely *plausible* textual basis for the agency action is necessary" (emphasis added)). IEEPA provides far more than "a colorable textual basis," *id.* at 722; text, context, history, and purpose overwhelmingly show that IEEPA authorizes the President to impose tariffs to address an emergency.

6.    Finally, plaintiffs make only barebones arguments on nondelegation and constitutional avoidance, so the argument is forfeited. *See* Resp.n.8, 10; *Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998) (barebones argument forfeited); *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019) (arguments in favor of subject-matter jurisdiction can be forfeited). And amici cannot raise issues not adequately raised by parties. *See, e.g.*, *Stanley v. Sanford*, 83 F.4th 1333, 1344 (11th Cir. 2023).

Regardless, there is no constitutional doubt here, let alone grave doubt. *See Almendarez-Torres v. United States*, 523 U.S. 224, 239 (1998). Every circuit to address the issue has concluded that IEEPA clearly passes the nondelegation doctrine's "not demanding" standard. *Gundy v. United States*, 588 U.S. 128, 132, 135 (2019); *see, e.g.*, *United States v. Shih*, 73 F.4th 1077, 1092 (9th Cir. 2023) (collecting cases); *accord Yoshida*, 526 F.2d at 581-83 (rejecting nondelegation challenge to TWEA, which has fewer intelligible principles than IEEPA).  For a

response to a properly-raised nondelegation argument, *see V.O.S. Selections, Inc. v. Trump*, Ct. Int'l Trade No. 25-00066, ECF No. 35.

## II.    The Court Of International Trade Continues To Exercise Jurisdiction Over Three Similar Challenges

 On May 13, the CIT held a hearing in *V.O.S. Selections, Inc. v. Trump* 25-00066 (Ct. Int'l Trade), ECF 50, on the plaintiffs' summary-judgment motion. Just like plaintiffs here, the *V.O.S.* plaintiffs challenge the President's imposition of tariffs under IEEPA. In his opening remarks, the presiding judge of the three-judge panel[5] stated "that it is indeed appropriate that we are meeting here in a courthouse in New York, a national courthouse with exclusive jurisdiction." Tr. 5:25-6-3 (Attachment).

The court has also scheduled merits briefing and a hearing, on May 21, in *Oregon v. Trump*, ECF 18, as well as expedited merits briefing in a third tariff challenge, *Princess Awesome. v. CBP*, 25-0078, ECF 13. Both cases have been assigned to the same three-judge panel. And the court recently granted the California's motion to appear as amicus in *Oregon* notwithstanding that the state has brought its own case in the Northern District of California.  ECF 37. These actions show that the CIT is currently exercising its nationwide jurisdiction over the same

---

[5]  The Chief Judge of the Court of International Trade "shall designate" a three-judge panel to determine an action that raises "an issue of the constitutionality of an Act of Congress, a proclamation of the President or an Executive order" or "has broad or significant implications in the administration or interpretation of the customs laws."  28 U.S.C. § 255.

tariff challenges brought by plaintiffs here. To allow this case to proceed would create confusion and severe administrability challenges should the two courts disagree. Such confusion is especially unnecessary where transfer is readily available and where plaintiffs can challenge subject-matter jurisdiction in the CIT and, if appropriate, ultimately obtain a retransfer.

## CONCLUSION

For these reasons, and the reasons in our motion, we respectfully request the Court transfer the case to the CIT.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

OF COUNSEL:

ALEXANDER K. HAAS
Director
STEPHEN M. ELLIOTT
Assistant Director
U.S. Department of Justice
Civil Division
Federal Programs Branch

/s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

SOSUN BAE
Senior Trial Counsel
LUKE MATHERS
BLAKE W. COWMAN
COLLIN MATHIAS
CATHERINE YANG
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St. NW
Washington, D.C. 20005
202-353-9063
Claudia.burke@usdoj.gov
*Counsel for Defendants*

MICHELLE SPAVEN
Acting United States Attorney
JOHN C. SPACCAROTELLA
Assistant United States Attorney
NY Reg No. 4304291
111 N. Adams Street, 4th Fl.
Tallahassee, FL 32301
(850) 216-3862

May 19, 2025

**LOCAL RULE 7.1(F) CERTIFICATION**

I HEREBY CERTIFY that this memorandum contains 3142 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

*/s/ Claudia Burke*
CLAUDIA BURKE


**LOCAL RULE 5.1(F) CERTIFICATION**

I HEREBY CERTIFY that a copy of the foregoing has been furnished via CM/ECF to all interested parties, this 19th day of May, 2025.

*/s/ Claudia Burke*
CLAUDIA BURKE